**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Christian Employers Alliance; Trinity Bible College & Graduate School; and Treasure Island Coins, Inc., Plaintiffs, vs. Alex M. Azar, Secretary of the United States Department of Health and Human Services; United States Department of Health and Human Services; Alexander Acosta, Secretary of the United States Department of Labor; United States Department of Labor; Steven Mnuchin, Secretary of the United States Department of the Treasury; United States Department of the Treasury, Defendants. | ) | **ORDER GRANTING PLAINTIFFS' MOTION FOR PERMANENT INJUNCTIVE RELIEF** Case No. 3:16-cv-309 |

Before the Court are the Plaintiffs' motion for permanent injunction and renewed motion for permanent injunction. See Doc. Nos. 32 and 40. The Defendants do not raise a substantive defense to the motions save for some specific objections to language of the requested relief. The motions have been fully briefed. See Doc. Nos. 31, 33, 34, 43, 49, and 52. For the reasons set forth below, the motions are granted.

## I. BACKGROUND

This case involves a challenge to the Affordable Care Act's ("ACA") contraceptive mandate ("Mandate"), a series of regulations promulgated pursuant to 42 U.S.C. § 300gg-13(a)(4) which

requires health plans to cover "preventive care and screenings" for women. Preventive care is defined as including "all FDA approved contraceptive methods." See Health Res. Servs. Admin., Women's Preventive Services Guideline, http://www.hrsa.gov/womensguidelines/index.html (last visited May 1, 2019). Some FDA approved contraceptives prevent a fertilized egg from implanting in the mother's uterus rather than preventing conception. The Plaintiffs refer to such contraceptives as abortifacients or abortion-causing drugs. The Plaintiffs view the use of such abortifacients as contrary to their religious beliefs. The Mandate forces the members of the Christian Employers Alliance ("Alliance") to choose between violating their religious beliefs regarding the sanctity of human life by forcing them to facilitate coverage in their group health plans for abortion-causing drugs and devices and related counseling and paying substantial fines. See 26 U.S.C. §§ 4980D, 4980H. The Alliance has no objection to providing coverage for non-abortion causing contraceptive drugs and devices. The Defendants, the agencies that have created and enforce the Mandate, admit the Mandate violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(b).

The Plaintiffs commenced this federal declaratory judgment action on August 29, 2016. See Doc. No. 1. On September 1, 2016, the Court granted the Plaintiffs' motion for temporary restraining order ("TRO") enjoining enforcement of the Mandate and its penalties against the Plaintiffs noting the Court remained bound by the Eighth Circuit Court of Appeal's holding in *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.,* 801 F.3d 927 (8th Cir. 2015) vacated on other grounds by *Dept. of H&HS, et al. v. CNS Int'l Ministries, et al.*, No. 15-775, 2016 WL 2842448 (May 16, 2016) that the Mandate violates the RFRA. See Doc. No. 11. The Court later extended the TRO to permit briefing by the parties on the Plaintiffs' motion for a preliminary injunction. See Doc. No. 15. On September 20, 2017, the Court stayed further action in the case and

deferred ruling on the pending motions until either a final decision by the Eighth Circuit in *Sharpe Holdings* was issued or "legislative, regulatory, or other executive changes affecting some or all of the issues raised in this case." See Doc. No. 26.

On October 13, 2017, the Defendants issued an Interim Final Rule ("IFR") acknowledging that the Mandate, including the 2013 "accommodation," violates the RFRA. See Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 82 Fed. Reg. 47,792, 47,806 (Oct. 13, 2017). Shortly thereafter, the Defendants voluntarily dismissed their Eighth Circuit appeal, which sought to overturn the district court's preliminary injunction in *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 2:12-cv-92, 2013 WL 6858588 (E.D. Mo. Dec. 30, 2013), aff'd, 801 F.3d 927 (8th Cir. 2015), cert. granted, judgment vacated on other grounds by *Dept. of H&HS, et al. v. CNS Int'l Ministries, et al.*, No. 15-775, 2016 WL 2842448 (May 16, 2016). Defendants finalized the IFR on November 15, 2018, with the new regulations ("Final Rule") taking effect on January 14, 2019. See Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (Nov. 15, 2018).

On November 2, 2017, the case was reassigned to the undersigned. See Doc. No. 27. Despite the case being stayed, the Plaintiffs filed motions for permanent injunction on March 13, 2018, and March 8, 2019. See Doc. Nos. 32 and 40. On April 1, 2019, the Court, on its own motion, issued an order lifting the stay because the appeal in *Sharpe Holdings* had been dismissed and regulatory changes occasioned by the Final Rule had obviated the need for the stay.

The Defendants have now concluded that requiring employers with sincerely held religious objections to comply with the Mandate would violate the RFRA. Having admitted that the Mandate

violates the RFRA, the Defendants do not oppose permanent injunctive and declaratory relief for the Alliance in general, although they do oppose certain aspects of the relief requested by the Plaintiffs. Specifically, the Defendants object to any order restraining the IRS from collecting payments required by 26 U.S.C. § 4980H for failure to comply with the Mandate and to any injunction extending to future members of the Alliance.

## II. LEGAL DISCUSSION

### A. PENALTIES

The Mandate is enforced through numerous mechanisms, including two penalties in the Internal Revenue Code. Religious employers that respond to the Mandate by offering a health plan that excludes abortifacient coverage are subject to an excise tax of $100 per covered beneficiary per day, or $36,500 per covered beneficiary per year. 26 U.S.C. § 4980D(b)(1). Religious employers that are unwilling to either violate their conscience or subject themselves to the Section 4980D penalty are stuck with a third choice: dropping their health plans altogether. This option subjects them to an "assessable payment" penalty under 26 U.S.C. § 4980H of $2,000 per full-time employee per year.

The RFRA makes it illegal to substantially burden a person's religious exercise unless doing so is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C. § 2000bb-1. In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 719 (2014), the United States Supreme Court found that the Mandate imposes a substantial burden because it forces religious employers to sponsor health plans that violate their religious beliefs, and punishes them if they refuse to do so. The Supreme Court specifically noted that the penalty provisions of Section 4980D and

Section 4980H promise "severe" economic consequences for religious employers that do not comply:

> If the companies continue to offer group health plans that do not cover the contraceptives at issue, they will be taxed $100 per day for each affected individual. . . . It is true that the plaintiffs could avoid these assessments by dropping insurance coverage altogether . . . [but] this course would also entail substantial economic consequences. The companies could face penalties of $2,000 per employee each year.

Id. at 720. The Supreme Court rejected the argument that "dropping insurance coverage eliminates the substantial burden" because neither RFRA nor the ACA "put[s] family-run businesses to the choice of violating their sincerely held religious beliefs or making all of their employees lose their existing healthcare plans." Id. at 723. "Because the contraceptive mandate forces [employers] to pay an enormous sum of money . . . if they insist on providing insurance coverage in accordance with their religious beliefs," the Supreme Court concluded that "the mandate clearly imposes a substantial burden on those beliefs." Id. at 726.

The Defendants contend, relying on the Fifth Circuit's opinion in *Hotze v. Burwell*, 784 F.3d 984 (5th Cir. 2015), that the Anti-Injunction Act ("AIA") deprives the Court of jurisdiction to restrain the IRS from collecting the "assessable payment" imposed by 26 U.S.C. § 4980H for failure to provide health insurance and the Plaintiffs must instead seek relief through administrative remedies. The Plaintiffs contend the Fourth and Seventh Circuits have already rejected this argument and this Court should do the same. See Korte v. Sebelius, 735 F.3d 654, 670 (7th Cir. 2013); Liberty Univ., Inc. v. Lew, 733 F.3d 72, 89 (4th Cir. 2013).

The AIA provides that, with statutory exceptions inapplicable here, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person,

whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). "This statute protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." Nat'l Fed'n of Indep. Bus. v. Sebelius ("NFIB"), 567 U.S. 519, 543 (2012). "Because of the Anti-Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund." Id.; see Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974). Where the AIA applies, it divests the court of subject-matter jurisdiction. Bob Jones Univ., 416 U.S. at 749.

In *NFIB*, the Supreme Court held that the AIA did not bar a pre-enforcement challenge to Section 5000A of the Code, which imposes a "penalty" on individuals who fail to maintain health coverage. 26 U.S.C. § 5000A(b). The Supreme Court relied on the "text of the pertinent statutes" and the label that Congress applied to the payment required by Section 5000A. NFIB, 567 U.S. at 543. The Supreme Court emphasized that the AIA "applies to suits 'for the purpose of restraining the assessment or collection of any tax,'" but that Congress had described the Section 5000A payment "not as a 'tax,' but as a 'penalty.'" Id. (quoting 26 U.S.C. §§ 5000A(b) and (g)(2), 7421(a)). The Supreme Court explained that "Congress's decision to label [the Section 5000A] exaction a 'penalty' rather than a 'tax' is significant because the Affordable Care Act describes many other exactions it creates as 'taxes.'" Id. at 544. "Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." Id.

In *Liberty University*, the Fourth Circuit drew heavily on both *NFIB* and the specific language of Section 4980H to conclude that "the employer mandate exaction, like the individual mandate exaction, does not constitute a tax for purposes of the AIA." 733 F.3d at 89. The court was

unpersuaded by the argument, advanced by the government here, that two isolated uses of the term "tax" in Section 4980H should be controlling. First, Section 4980H(c)(7) refers to the exaction as a tax "to make clear that, for purposes of determining deductibility, the exaction is a tax imposed by chapter 43" and is thus non-deductible. Id. at 88. In this context, using any other word "would create confusion." Id. Second, although Section 4980(b)(2) refers to "[t]he aggregate amount of tax determined under paragraph (1)," paragraph (1) in turn uses the term "assessable payment." The Fourth Circuit was unwilling to let a "single unexplained use" of the word "tax" override Congress' repeated use of a different label throughout Section 4980H. See id. The Fourth Circuit concluded that because Congress "initially and primarily refers to the exaction as an 'assessable payment' and not a 'tax,' the statutory text suggests that Congress did not intend the exaction to be treated as a tax for purposes of the AIA." Id. at 88.

The Seventh Circuit reached a similar conclusion in *Korte*. That case, like this one, involved a challenge to the contraceptive mandate. The Seventh Circuit recognized that Section 4980D and Section 4980H are two different penalty provisions reinforcing a single regulatory mandate, and neither provision imposes a "tax" for AIA purposes. Korte, 735 F.3d at 669. The "obvious aim" of Section 4980D "is not to raise revenue but to achieve broad compliance with the regulatory regime through deterrence and punishment." Id. at 670. "[T]he same is true of the alternative payment in § 4980H." Id. at 671. Both of these provisions impose "a penalty for noncompliance with the regulatory mandates on employer-based health-care plans" and do not constitute "a tax for purposes of the Anti-Injunction Act." See id. at 671; see also Oklahoma ex rel. Pruitt v. Sebelius, No. CIV-11-30, 2013 WL 4052610, at *10 (E.D. Okla. Aug. 12, 2013) (adopting the Fourth Circuit's analysis in *Liberty Univ.* and concluding that AIA does not bar challenges to Section 4980H).

The Fifth Circuit disagreed with the Fourth and Seventh Circuits in *Hotze* concluding that the assessable payment is a tax for purposes of the AIA. Hotze, 784 F.3d at 997. The Fifth Circuit reasoned that the assessable payment functions like a tax, is collected like a tax, and the funds raised are deposited in the treasury. Id. The Fifth Circuit focused its analysis on the term tax, which is used several times in Section 4980H in describing how the "assessable payment" should be collected, rather than operative phrase "assessable payment" which is used repeatedly throughout the statute and is the focus of the statute. Id. at 997-98. It concluded the AIA applied as it could find no compelling reason to ignore Congress' use of the word tax in the statute. The opinion is unpersuasive as it fails to heed the teaching of *NFIB* that courts must look to the specific statutory language used by Congress.

The Court has carefully reviewed *Liberty University*, *Korte*, and *Hotze*. The Court finds the analysis of Seventh Circuit in *Liberty University* and the Fourth Circuit in *Korte* to be more persuasive than that of the Fifth Circuit in *Hotze*. The operative phrase in Section 4980H is "assessable payment." See 26 U.S.C. § 4980H(a). The question is whether an "assessable payment" is a tax or not. Presumably, Congress would have simply used the word tax instead of "assessable payment" if its purpose was to impose a tax. Thus, it must mean something other than a tax. While the use of both the word tax and assessable payment in Section 4980H is confusing, the focus of the section is on imposing an "assessable payment" in certain circumstances. The AIA does not apply to "all disputes tangentially related to taxes." Korte, 735 F.3d at 670 (internal citations and quotations omitted). The Supreme Court in *NFIB* counseled that the AIA only applies to taxes and the collection of a penalty is not a tax. NFIB, 567 U.S. at 543. Statutory text is the best evidence of the intent of Congress. Id. at 544. The Court finds an "assessable payment" is more like a penalty

than a tax and following the reasoning of *NFIB, Korte,* and *Liberty University* concludes the AIA does not apply to deprive the Court of jurisdiction. See Korte, 735 F.3d at 670-71 (finding Section 4980H was meant to penalize and is best described as a penalty rather than a tax).

**B. FUTURE MEMBERS**

The Defendants contend that any injunction entered by the Court should be limited to Alliance members as of the date of the injunction and should not apply to future members of the Alliance. The Alliance contends limiting the relief to current members will result in an endless cycle of litigation as new members and the Alliance seek to protect their rights. The Court finds the position of the Alliance persuasive.

In another case challenging the Mandate, the district court initially sided with the Defendants and refused to issue relief that extended to the Catholic Benefit Association's ("CBA") future members. See Catholic Benefits Ass'n LCA v. Sebelius, 24 F. Supp. 3d 1094, 1106-07 (W.D. Okla. 2014). This resulted in the CBA having to file a second lawsuit to seek the same relief for its newest members. Catholic Benefits Ass'n v. Hargan, No. CIV-14-685-R (W.D. Okla. March 7, 2018); Doc. No. 31-4. Eventually, the Court agreed with the CBA and found that it was judicially efficient to issue a permanent injunction that protects the CBA's current and future members. Id.; see also Reaching Souls Int'l Inc. v. Azar, No. CIV-13-1092-D (W.D. Okla. March 15, 2018) (extending Mandate related injunction to "all current and future participating employers in the Guidestone plan"); Doc. No. 35.

The Defendants offer little rationale for limiting the injunction to current members of the Alliance. The Court agrees with the Alliance that such a limitation would result in continuous

litigation and be a waste of judicial resources as well as the time and resources of the litigants. For these reasons, the Court's injunction will apply to current and future members of the Alliance.

### C. ACA COMPLIANCE LANGUAGE

As part of their requested relief, the Plaintiffs ask the Court to declare that "Alliance members comply with their obligations under the Affordable Care Act and Defendants' regulations under 42 U.S.C. § 300gg-13 by offering otherwise compliant health plans that exclude abortifacient services and related patient education and counseling." See Doc. No. 32-1, p. 2. The Defendants contend there is no need for this language, it would be inconsistent with the injunction language which prohibits the Defendants from enforcing the Mandate, and no other obligations under the ACA are at issue in this case other than the Mandate. The Alliance contends the language is necessary as the Mandate may be enforced not only by the IRS but through private actions brought by beneficiaries. See 29 U.S.C. § 1132. Given a private right of action by third parties may exist if the requested language is not included in the declaration, the Court agrees with the Alliance that the requested language is necessary and thus is not inconsistent with prohibiting the Defendants from enforcing the Mandate against the Alliance and its members. The language of the requested declaration can be altered to address the Defendant's concerns about an overly broad interpretation of the phrase "obligations under the Affordable Care Act" to specify exactly what obligations are being referenced.

## III. CONCLUSION

Upon careful consideration of the entire record and particularly the Defendants' concession on the merits of Plaintiffs' RFRA claim, the Court finds that a permanent injunction under Rule 65(d) and declaratory relief under 28 U.S.C. § 2201 are warranted. Accordingly, Plaintiffs' Motions for Permanent Injunction and Declaratory Relief (Doc. Nos. 32 and 40) are **GRANTED**. The Plaintiffs' motion for preliminary injunction (Doc. No. 18) and hearing (Doc. Nos. 24 and 42) are **denied as moot**. Having prevailed on their RFRA claim and this Court having provided the relief requested by the Plaintiffs, all other claims in this case are dismissed without prejudice. Any request for costs or attorney's fees may be submitted in accordance with D.N.D. Civ. L. R. 54.1. In addition, the Court **ORDERS AND DECLARES** as follows:

(1.) The Court finds the Plaintiffs have demonstrated, and Defendants concede, that the promulgation and enforcement of the Mandate against the Alliance and its members through any means that require them to provide or facilitate the provision of coverage for contraceptive services to which they hold sincere religious objections violated and would violate the Plaintiffs' and Alliance members' rights under the RFRA, 42 U.S.C. §§ 2000bb to 2000bb-4.

(2.) The Court finds the Alliance and its members will suffer irreparable harm to their ability to practice their religious beliefs, harm that is the direct result of Defendants' conduct, unless Defendants are enjoined from further interfering with Alliance members' practice of religion. The threatened injury to Alliance members outweighs any injury to Defendants resulting from this injunction. The public interest in the vindication of religious freedom favors the entry of an injunction.

(3) The Court **declares** that the Defendants violated the RFRA by promulgating and

enforcing regulations pursuant to 42 U.S.C. § 300gg-13 that require Alliance members to take actions that facilitate the provision, through or in connection with their health plans, of abortion-causing drugs, devices, and procedures and related education and counseling contrary to their sincerely held religious beliefs.

(4) The Court further **declares** that Alliance members comply with their obligations under the Affordable Care Act to provide contraceptive coverage and Defendants' regulations under 42 U.S.C. § 300gg-13 by offering otherwise compliant health plans that exclude abortion-causing drugs, devices, and procedures and related education and counseling.

(5) The Court, **permanently enjoins and restrains** the Defendants, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from enforcing the substantive requirements imposed in 42 U.S.C. § 300gg-13(a)(4) and any related regulations implementing that provision and from pursuing, charging, assessing, or collecting penalties, fines, assessments, assessable payments, or undertaking any other enforcement actions for noncompliance related thereto, including those found in 26 U.S.C. §§ 4980D, 4980H, and 29 U.S.C. §§ 1132, 1185d, against the Alliance and its members, their health plans, and their insurers and third-party administrators in connection with Alliance member health plans, to the extent that these laws and related regulations require Alliance members to contract, arrange, pay, or refer for abortion-causing drugs, devices, and procedures and related education and counseling.

(6) The Court **declares** that any penalties, fines, assessments, or assessable payments that may have accumulated against any Alliance member through the date of this order are hereby voided and eliminated.

(7) The Defendants remain free to enforce 26 U.S.C. § 4980H for any purpose other than to require Alliance members, their insurers, third-party administrators, or others acting on their behalf to provide or facilitate the provision of abortion-causing drugs, devices, and procedures and related education and counseling to which the Alliance or its members have sincerely-held religious objections, or to punish them for failing to do so.

(8) The relief provided in this order shall be restricted to the Plaintiffs and all present and future members of the Christian Employers Alliance, including TRA Industries, Inc. d/b/a Huntwood Industries, their respective health plans, insurers, and third-party administrators in connection with Alliance member health plans so long as the Alliance member meets the following criteria:

a. The employer is not yet protected from the Mandate by any other judicial order;

b. The Alliance has determined that the employer meets the Alliance's strict membership criteria;

c. The Alliance's membership criteria have not changed since the Alliance filed its complaint on August 26, 2016; and

d. The employer is not subject to an adverse ruling on the merits in another case involving the Mandate.

**IT IS SO ORDERED**.

Dated this 15th day of May, 2019.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court